IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Kinda Wood USA, LLC, | : | |
| Plaintiff | : | Civil Action 2:07-cv-1137 |
| v. | : | Judge Sargus |
| MGV Enterprises LLC aka MGV Enterprises, Inc., *et al.*, | : | Magistrate Judge Abel |
| | : | |
| Defendants | | |

**OPINION AND ORDER**

This matter is before the Court on defendants Media Sales, Inc. ("Media Sales")

and Joseph Freedman Co.'s (collectively "the Freedman defendants") motion to dismiss

Plaintiff Kinda Wood U.S.A., LLC's ("Kinda Wood") complaint against them based on

lack of personal jurisdiction under Ohio's long-arm statute, Ohio Revised Code §

2307.382, and the Constitutional constraints of due process (doc. 3). [1]

**I.**

Plaintiff's complaint alleges that Defendant MGV Enterprises, LLC (hereinafter

"MGV") breached a contract to supply Kinda Wood with "HDPE, PVC and aluminum

mixed regrind as per sample lot delivered and site inspections . . . and that did not

---

[1]The Court permitted limited discovery on the issue of personal jurisdiction, and
the Court now considers the motion fully briefed following the parties' supplemental
memoranda filed July 27 and August 18, 2008 (docs. 25, 28).

contain any other substance." Complaint, ¶¶ 16, 17 and 57. Plaintiff does not allege any written contract with Media Sales or Freedman, but claims that these Defendants breached an oral contract containing the same provisions regarding the composition of the HDPE, PVC. *Id.* at ¶ 62. Plaintiff further alleges that Defendants made fraudulent and negligent misrepresentations to Kinda Wood that the product was "HDPE, PVC and aluminum mix regrind as per sample lot delivered and site inspection and did not contain any other substance." *Id.* at ¶¶ 74, 77 and 78. Kinda Wood asserts a claim of promissory estoppel based on the same facts. *Id.* at ¶ 67.

The Freedman defendants are based in Massachusetts, and they contend that they do not have sufficient contacts with Ohio to subject them to personal jurisdiction here. The Freedman defendants have no property in Ohio. John D. Freedman's January 11, 2008 Affidavit at ¶¶ 12-14, Doc. 3-2. They have no employees, sales representatives or sales agents in Ohio. *Id.* at ¶ 16.

It is undisputed that MGV, a Michigan company, marketed Freedman's regrind product. John D. Freedman's March 5, 2008 Affidavit, ¶ 14, Doc. 14-2. MGV was the exclusive broker for Freedman's regrind. *Id.,* ¶ 25. MGV developed Kinda Wood as a potential purchaser of the regrind, and neither Freedman nor Media Sales solicited business from Kinda Wood. *Id.,* ¶ 24.

There is no evidence that the Freedman defendants initiated the sale of the regrind to Kinda Wood, and their contacts with Kinda Wood during the negotiation of MGV's contract with Kinda Wood were limited. On July 18, 2007, Gerry Dallimore and

2

other representatives of Kinda Wood went to Freedman's facility in Massachusetts to see the regrind operation.  The same day, Dallimore wrote a letter to John Freedman to thank him for his assistance during the visit, and to "reconfirm we will need to order a minimum qty of 18 Million pounds of HDPE, PVC mixed with Aluminum over a 6 month period, loadings planned to be commenced next week subject to container availability."  Dallimore Aff., Exh. D, Doc. 25-3.  Dallimore's letter sought "re-assurance from you that you will take pictures of the loading . . . and record the container and seal number, supplied together with a weigh bridge ticket showing the net weight" of the container shipping the product to China.  *Id.*  The photographs were to be e-mailed to Kinda Wood.  *Id.*

On July 19, 2007, John Freedman sent to Dallimore an e-mail stating:

1.  We will sell you 100% of our current inventory & six month production at the agreed price, as well as act as agent w/ MGV in a best effort to fill the balance of the 18M lbs. but cannot guarantee success in doing so.  It is understood that we, together w/ MGV will be action as exclusive agent in this effort throughout the US & that your firm & agents will not be pursuing material in the marketplace.

2.  We will be selling material through one of our sister co's: Media Sales, Inc., jointly via MGV.

\* \* \*

4.  We had requested $.0125/bl. to re-pack current inventory.  Why don't we agree on flat price of $500/load w/ a cap of 4M pounds.?

\* \* \*

7.  I will have our marketing manager, Ernie Gagnon, contact you directly with the chemistry information on our aluminum & copper chops/shreds.  You can discuss pricing directly with him.  This and all metal business will be directly with the Joseph Freedman Co., Inc.

3

8.    Loading, photographing, etc. . . outgoing loads per your
      requirements will not be problematic.

9.    I will forward you the weights on the two loads from last week,
      please arrange for payment on this material w/ MGV.

Dallimore Aff., Exh. C, Doc. 25-3.

The negotiations of the contract between MGV and Kinda Wood were

undertaken by Milko Gergov of MGV and Garry Dallimore of Kinda Wood.  Freedman,

as the supplier of the regrind, was kept apprised.  Dallimore Aff., Exhs. E-1 through E-

11, Doc. 25-4 and 25-5.

John Freedman, in Massachusetts, telephoned Dallimore, in Ohio, "on a number

of occasions."  Dallimore Aff. at ¶ 24.  Dallimore's affidavit does not disclose when the

telephone calls were made or the substance or length of those calls or conversations.

Although Plaintiff asserts that MGV and Media Sales were part of a joint venture

and thus were both bound by the July 31, 2007 written contract, including the forum

selection clause, it offers no facts in support of those allegations.  *See* Dallimore Aff.  at

¶¶ 5, 6 and 9, Doc. 25-2.  Kinda Wood relies on an agent fee agreement between Media

Sales and MGV; however, the document is not executed.  Dallimore Aff. at  Exh. B, Doc.

25-3.  Further, the draft agreement describes Media Sales as the "Seller" and MGV as

"agent" for Kinda Wood.  In fact, MGV was not Kinda Wood's agent; rather MGV

contracted to sell the regrind to Kinda Wood.

Freedman's Sales History Register from January 2003 to January 2008 shows

sales within Ohio totaling 228,899,250.8 pounds of material, for total dollar sales of

4

$31,710,323.50.  Dallimore Aff., ¶¶28-34.  Sales in Ohio for 2008, annualized, would be 15,821,687 pounds of material, for total dollar sales of $5,701,766.80.  *Id.*

Freedman's Purchase History Register from January 2003 to January 2008 shows purchases totaling 8,745,597 pounds of material, for total dollar purchase within Ohio of $4,501,625.73.  *Id.,* ¶¶ 35-41.  Purchases from Ohio in 2008, annualized, would be 1,869,098 pounds of material, for total dollar purchases of $1,937,958.07.  *Id.*

## II.

### A.    Defendants Media Sales, Inc. and Joseph Freedman Co., Inc.

Defendants Freedman and Media Sales were not parties to the contract between plaintiff and MGV.  Freedman and Media Sales are incorporated under the laws of the Commonwealth of Massachusetts.  Each has its principal place of business in Springfield, Massachusetts.  Freedman has industrial scrap metal recycling operations at two facilities in Springfield, Massachusetts.  Media Sales is a brokerage company that Freedman uses in some of its transactions.  Media Sales brokered the sale of regrind to MGV, and Media Sales invoiced MGV for the material.

The Freedman defendants assert that they are not amenable to suit in Ohio pursuant to Ohio's long arm statute because the conditions of Ohio Revised Code § 2307.382(A) have not been satisfied.   The Freedman defendants further maintain that they do not have the type of extensive contacts with Ohio that would trigger general jurisdiction.

5

Kinda Wood bases personal jurisdiction in Ohio on the following facts: it relied upon all defendants' representations, and as a result has suffered significant damages in Ohio from the defendants' misrepresentations; Ohio was the "center of gravity" of the transaction; key witnesses and documents are located in Ohio; Freedman operates a website and a nationwide toll-free number; Freedman defendants sold items directly to Kinda Wood.  Based on these facts, Kinda Wood argues that three independent grounds support the exercise of personal jurisdiction over the Freedman defendants: (1) the defendants' acts and omissions in creating tortious injury in the State of Ohio; (2) their acts in entering into a contract to be performed in part in the State of Ohio; and (3) the totality of the defendants' acts and omissions having significant contacts with the State of Ohio.  Finally, Plaintiff states that the Freedman defendants are amenable to personal jurisdiction based on their significant contacts with the state of Ohio.

### III.

The party asserting that the Court has personal jurisdiction has the burden of proof. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991); *Weller v. Cromwell Oil Co.*, 504 F.2d 927 (6th Cir. 1974).  If the defendant supports its Rule 12(b)(2) motion to dismiss by affidavit, plaintiff "by affidavit or otherwise must set forth specific facts showing that the court has jurisdiction." *Weller*, 504 F.2d at 930.  When presented with a properly supported Rule 12(b)(2) motion to dismiss, a court has the discretion to decide the motion on the briefs and affidavits or it may permit discovery and an evidentiary hearing. *Theunissen*, 935 F.2d 1458. In the absence of a preliminary evidentiary hearing,

the plaintiff need only make a *prima facie* showing of personal jurisdiction. *Theunissen*, 935 F.2d 1458; *American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1168-69 (6th Cir. 1988).

### A.     Specific Jurisdiction

In a diversity suit, personal jurisdiction over a foreign defendant is determined by the law of the forum state. *In-Flight Devices Corporation v. Van Dusen Air, Inc.*, 466 F.2d 220, 224 (6th Cir. 1972). A federal district court may exercise personal jurisdiction only if the requirements of both the state long-arm statute and constitutional due process are met. *See Calphalon*, 228 F.3d at 721; *Nationwide Mutual Ins. Co. v. Tryg International Ins. Co.*, 91 F.3d 790, 793 (6th Cir. 1996); *Reynolds v. International Amateur Athletic Fed'n*, 23 F.3d 1110, 1115 (6th Cir. 1994). *See also Goldstein v. Christiansen*, 70 Ohio St. 3d 232, 235, 638 N. E. 2d 542, 543 (1994) ("When determining whether a state court has personal jurisdiction over a nonresident defendant, the court is obligated to (1) determine whether the state's 'long-arm' statute and the applicable Civil Rule confer personal jurisdiction, and if so, (2) whether granting jurisdiction under the statute and rule would deprive the defendant of the right to due process of law pursuant to the Fourteenth Amendment to the United States Constitution.").

This analysis is not conflated into one step because Ohio's long-arm statute does not reach to the limits allowed by the Constitution. *Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir. 1998) (citing *Goldstein*, 638 N.E. 2d 545, n.1). Though Ohio's long-arm statute "does not extend to the constitutional limits of the Due Process Clause, [the] central inquiry is whether minimum contacts are satisfied so as not to offend 'traditional notions of fair

play and substantial justice.'" *Calphalon*, 228 F.3d at 721 (citing *Cole*, 133 F.3d at 436).

When jurisdiction is founded on the long-arm statute, the asserted cause of action

must arise from at least one of the nine criteria listed in the statute. *See* Ohio Revised

Code §2307.382(A)(1)-(9); *Berning v. BBC, Inc.*, 575 F. Supp. 1354, 1356 (S.D. Ohio 1983).

### 1.    Jurisdiction Under Ohio's Long-Arm Statute

Generally, a court must first determine whether Ohio's long-arm statute reaches

this controversy. Ohio Revised Code § 2307.382 creates a limited basis for exercise of

personal jurisdiction when the litigation is based on one of the acts set forth in the

statute. Plaintiff appears to argue that the Freedman defendants are amenable to

personal jurisdiction under section 1, 2, and 6 of Ohio's long-arm statute[2], which

provides:

> (A)  A court may exercise personal jurisdiction over a person who acts
> directly or by an agent, as to a cause of action arising from the person's:
> (1) Transacting any business in this state;
> (2) Contracting to supply services or goods in this state;
>             * * *
> (6) Causing tortious injury in this state to any person by an act outside this
> state committed with the purpose of injuring persons, when he might
> reasonably have expected that some person would be injured thereby in
> this state. . . .

Ohio Rev. Code § 2307.382(A).

Here, the Court need not consider whether the Ohio long-arm statute permits the

exercise of jurisdiction over the Freedman defendants because plaintiff fails to allege

---

[2]Plaintiff's memoranda do not rely on or reference any specific subsection of
Ohio Revised Code § 2307.382.

sufficient contacts to support a finding of jurisdiction under the constitutional analysis as described below.

### 2.    Due Process

The Court finds that exercising jurisdiction over the Freedman defendants would not comport with due process.  The constitutional touchstone is whether the non-resident defendant established such minimum contacts with the forum state that the exercise of jurisdiction would comport with "traditional notions of fair play and substantial justice."  *International Shoe Co. v. State of Washington*, 326 U.S. 310 (1945); *Theunissen*, 935 F.2d at 1459.  Courts look to three factors in making this inquiry:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there.  Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant reasonable.

*Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968); *In-Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220, 226 (6th Cir. 1972); *National Can Corp. v. K Beverage Co.*, 674 F.2d 1134, 1137-38 (6th Cir. 1982).

Under the first prong of the *Southern Machine* test, "the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state."  *Southern Machine*, 401 F.2d at 381.  Purposeful availment is the "constitutional touchstone" of personal jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).  This requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated'

9

contacts, ... or of the unilateral activity of another party or a third person." *Id.* at 475 (internal citations omitted). Rather, purposeful availment exists where the defendant's contacts with the forum state "proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State" such that he "'should reasonably anticipate being haled into court there.'" *Id.* at 474-75 (emphasis in original) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

In his affidavit, Dallimore states that the underlying transaction was Kinda Wood's efforts to purchase certain material for recycling. *See* Dallimore's Aff. at ¶ 4; doc. 25-2 at p. 1. This suggests, however, that Kinda Wood initiated contact with one or more of the defendants; there is no evidence that defendants initiated contact with Plaintiff.

According to Plaintiff, under the terms of the agreement, defendant MGV agreed to sell an initial lot of HDPE, PVC, and aluminum mixed regrind in accordance with the sample lot and the site inspection. MGV and the Freedman defendants jointly agreed to sell further additional lots of the same material, in the form of a supply agreement, providing 2 million pounds per month of regrind, or up to 24 million pounds of material over a six month period. The contract states that the seller shall provide the buyer with photographs of the loading procedure, certified weight tickets, standard bills of lading, packing lists and invoices. *See* Purchase Contract; doc. 25-3 at p. 2.

Plaintiff maintains that MGV was acting as the agent of Media Sales and Freedman when entering into the contract with Kinda Wood. Plaintiff relies on the

10

Agent Fee Agreement between MGV and Joseph Freedman at Media Sales, which states that MGV was acting as principal on the initial lot sold to Kinda Wood and as the agent for the joint venture of Media Sales and itself on the subsequent lots. *See* Dallimore Aff. at ¶ 11, Exh. B. The Freedman defendants correctly point out, however, that this agreement was not signed. In his affidavit, Dallimore states that in its communications, "Media Sales/Freedman held out MGV as having authority to act as its agent and broker in the deal, to enter the contract on behalf of MGV and Medial Sales, and to bind it to the contract, including the Ohio forum selection clause." *See* Dallimore Aff. at ¶12, Exh. B; doc. 25-2 at p. 3.

Despite Dallimore's assertions that a joint venture existed between MGV and the Freedman defendants and that MGV had authority to enter into contract on behalf of the Freedman defendants, plaintiff has not asserted any facts which establish an agency relationship between MGV and the Freedman defendants. Dallimore's allegations, standing alone, cannot establish that such an agency relationship existed. Furthermore, plaintiff has not asserted a claim against the Freedman defendants for breach of the *written* contract. Instead, plaintiff asserts a claim for breach of an oral contract. As a result, plaintiff's complaint fails to assert a cause of action that even requires a finding that an agency relationship existed.

Plaintiff submitted copies of two invoices from Media Sales that were sent to Kinda Wood. *See* Exhs. J & K; doc. 25-9, p. 2-3. In his affidavit, John Freedman states that Media Sales generated invoices for the regrind, and the invoices were issued to

11

MGV in Michigan.  *See* Freedman Aff. at ¶ 11; doc. 3-2, p. 4.  In his March 5, 2008

affidavit, Freedman stated:

> Media Sales has no record of the two invoices attached to Kinda Wood's
> Response to Defendants' Motion to Dismiss as Exhibits 1 and 2, which
> invoices should have been directed to, and were directed to, MGV.
> Attached hereto as Exhibits A and B, respectively, are true and accurate
> copies of Media Sales, Inc.'s Invoices 90209 and 90210 issued to MGV.
> Media Sales never received any payment from Kinda Wood on any
> invoice.

Freedman Aff. ¶ 20; doc. 14-2, p. 3. *See* docs. 14-3 & 14-4.

The record supports the Freedman defendants' contention that they did not

negotiate the terms of and were not parties to the Purchase Contract entered into

between plaintiff and MGV.  It is undisputed that the Freedman defendants do not own,

maintain, operate lease, or occupy property within Ohio.  They do not own or possess

any personal property within Ohio.  They have financial accounts in Ohio.  They did not

make any sales of goods or service within the state of Ohio in connection with the Kinda

Wood transaction giving rise to this lawsuit.  They maintain no employees, sales

representatives or sales agents in Ohio.  No representative, agent or employee of the

Freedman defendants entered the state of Ohio for the purpose of transacting business

giving rise to this lawsuit. *See* doc. 3-2.

The Freedman defendants acknowledge that the Freedman Co. has purchased

material from Ohio and sold material to Ohio over the past five years, as evidenced the

purchase history registers and sales history registers.  However, there is no evidence that

these purchases or sales are related to the sale of regrind material from MGV to Kinda

Wood, and the history of purchases and sales in Ohio cannot form the basis for specific personal jurisdiction in this case.

Assuming the Freedman defendants entered into a contract with plaintiff, the mere existence of a contract is not be sufficient to establish personal jurisdiction over the Freedman defendants. *Calphalon Corp. v. Rowlette*, 228 F.3d 718 (6th Cir. 2000). The product at issue was in Massachusetts. Although Media Sales agreed to photograph the product as it was being packaged and sealed, they did so while it was in Massachusetts. Plaintiff also points to Freedman's website, but "[a] passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise personal jurisdiction." *Zippo Manufacturing Company v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997); *see also Neogen Corporation v. Neo Gen Screening, Inc.*, 282 F.3d 883, 890 (6th Cir. 2002). The Freedman defendants did not travel to Ohio; instead, plaintiff traveled to Massachusetts to inspect the facility. Even construing these allegations in favor of the plaintiff, the Court cannot find purposeful availment here. *See e.g., Calphalon Corp. v. Rowlette*, 228 F.3d 718 (6th Cir.2000) (noting that foreign corporation's contacts with Ohio were too "fortuitous" or "attenuated" to support the exercise of jurisdiction because its obligations under the agreement were to be performed outside of Ohio).

Plaintiff also relies on *Neal v. Janssen*, 270 F.3d 328, 333 (6th Cir. 2001). In *Neal*, the Sixth Circuit held that "when a foreign defendant purposefully directs communications into the forum that cause injury within the forum, and those communications form the

13

'heart' of the cause of action, personal jurisdiction may be present over that defendant without defendant's presence in the state." *Neal*, 270 F.3d at 333.  In *Rice v. Karsch*, 154 Fed. Appx 454 (6th Cir. 2005), the Sixth Circuit recognized limits of *Neal*, noting that the plaintiff had not alleged that the defendant solicited, negotiated, or performed any aspect of the contract in the forum state.  The Sixth Circuit also found significance in the fact that the plaintiff, rather than the defendant, had initiated the communications leading to the alleged fraudulent misrepresentation.  *See Rice*, 154 Fed. Appx. at 462 ("[I]t is undisputed that *all* of [defendant's] communications sent into Tennessee prior to the filing of the Complaint were as a result of communications initiated by [plaintiff], not by [defendant].  Under these circumstances, the Court finds that personal jurisdiction would be improper.")(emphasis in original).  In *R.I.A. Melbourne Limited Partnership v. Forman Capital, LLC*, No. 1:08-cv-01012, 2008 WL 2388012 (N.D. Oh. Jun. 6, 2008), the court rejected a similar argument based on *Neal* after concluding that the plaintiff's allegations sounded more in contract, invoking *Calphalon*, than in tort, which was the basis for *Neal*.

Here, plaintiff initiated communications with the Freedman defendants.  All written communications made by Freedman were made in response to communications or inquiries by Dallimore.  On July 18, 2007, Dallimore visited the Freedman facility. Following the visit, Dallimore wrote to Freedman.  On July 19, 2007, Freedman e-mailed in response to Dallimore's letter.  Dallimore has provided no information regarding any alleged phone calls to Ohio by the Freedman defendants.  Further, as in *R.I.A. Melbourne*

14

*Limited Partnership v. Forman Capital*, plaintiff's allegations "sound more in contract, . . . than in tort." *Id.* at 2008 WL 2388012, *6.

Based on the foregoing, Plaintiff has not established the requirements of *Southern Machine*. The Court finds insufficient contacts with the state of Ohio to establish personal jurisdiction over the Freedman defendants. *See LAK, Inc.*, 885 F.2d at 1303 ("[E]ach criterion represents an independent requirement, and failure to meet any one of the three means that personal jurisdiction may not be invoked.").

### B.  General Jurisdiction

When examining the limits of personal jurisdiction, a distinction is made between "general" jurisdiction and "specific" jurisdiction. *See, e.g., Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 & 473 n. 15 (1985). Plaintiff has not alleged that Freedman is subject to the Court's general jurisdiction; however, for thoroughness sake, the Court will briefly review the standard.

In a case of general jurisdiction, a defendant's contacts with the forum state are of such a "continuous and systematic" nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state. *See, e.g., Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952). Whereas in a specific jurisdiction case, "a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984).

15

A review of case law demonstrates that continuous and systematic contacts is a fairly high standard. *Id.* at 416 (no jurisdiction over a foreign corporation that sent officer to forum for one negotiating session, accepted checks drawn on a forum bank, purchased equipment from the forum, and sent personnel to the forum to be trained); *Cubbage v. Merchent*, 744 F.2d 665, 667-68 (9th Cir.1984) (finding no jurisdiction over defendant doctors despite a significant numbers of patients in the forum, use of the forum's state medical insurance system, and a telephone directory listing including the defendants that reached the forum), cert. denied, 470 U.S. 1005 (1985).

> Notably, the Sixth Circuit Court of Appeals rejected a claim that general jurisdiction existed based upon the following contacts between the defendant and the forum state, Ohio: 1) the existence of a prior reinsurance agreement between the defendant and an Ohio company; 2) a prior reinsurance agreement between the parties; and 3) the defendant's participation in a property pool. *Nationwide Mut. Ins. Co. v. Tryg Intern. Ins. Co., Ltd.*, 91 F.3d 790, 793-94 (6th Cir.1996). The appellate court concluded that such contacts failed to establish the kind of "continuous and systematic" conduct required to support general personal jurisdiction over the defendant. *Id.* (citing *Landoil Resources Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d 1039, 1045-46 (2d Cir.1991) (holding that thirteen business trips of short duration over the course of eighteen months did not constitute "continuous and systematic" solicitation of business in the state of New York)). Additional facts noted by the court and found insignificant as a basis for general jurisdiction included the length of the relationship with the forum state and that the defendant did not direct its activities toward the forum state in order to enter a contract. *See also, Mancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir.2000) (noting that "[t]he standard for establishing general jurisdiction is 'fairly high' and requires that the defendant's contacts be of the sort that approximates physical presence") (quotations and citations omitted).

*Jones v. Blige*, No. 04-60184., 2006 WL 1329247 at * 2 (E.D. Mich. May 16, 2006).

Although Freedman Co.'s purchase history registers and the sales history registers (unrelated to Media Sales) indicate that  Freedman has purchased material from Ohio and sold material to Ohio for the past five years, the Freedman defendants' business activity does not reach the level of continuous and systematic contacts with the forum state.  A finding of general jurisdiction requires conduct akin to physical presence in the state. *See Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 447 (1952) (upholding Ohio's exercise of general jurisdiction over corporation where corporation's president worked out of an office in Ohio from which he drew and distributed payroll checks, performed corporation's filing and correspondence, and held regular directors' meetings, and where the corporation held two Ohio bank accounts).  Again, the uncontroverted affidavit of Freedman indicates that neither Freedman nor Media Sales owns, maintains, operates, leases or occupies any property within the state of Ohio; neither Freedman nor Media Sales owns, maintains, operates, leases or possesses any personal property within the state of Ohio; Freedman and Media Sales do not own, keep, or maintain any money or financial accounts within the state of Ohio; neither Freedman nor Media Sales maintains an agent for service of process or summons within the state of Ohio; and neither Freedman nor Media Sales has entered into any agreement, as principal, with any sales representative for the solicitation of orders within the state of Ohio. *See* Doc. 3-2.  Accordingly, the Freedman defendants are not subject to general personal jurisdiction in this state.

17

**IV.**

For the reasons stated above, defendants Media Sales, Inc. and Joseph Freedman

Co.'s Motion to Dismiss Plaintiff's Complaint (doc. 3) is **GRANTED.**


<u>    9-30-2008    </u>
**Date**

Edmund A . Sargus, Jr.
**United States District Judge**